**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ESTATE OF KEVIN DIZMANG,

    Plaintiff - Appellant,

v.

SEAN REED, a Colorado Springs Police
Officer, in his individual capacity; NICK
FISCHER, a Colorado Springs Fire
Department Paramedic, in his individual
capacity,

    Defendants - Appellees.

No. 25-1118
(D.C. No. 1:24-CV-00423-CNS-MDB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**, District Judge.[**]
_____

A crisis response unit of the Colorado Springs Police Department (CSPD) responded to reports that Kevin Dizmang was experiencing a psychotic breakdown. At the scene, two members of the unit, Officer Sean Reed and paramedic Nicholas Fischer, observed Dizmang walking in traffic. When Reed's attempts to restrain Dizmang failed, Fischer tackled Dizmang and held him down until Reed could

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[**] The Honorable Robert J. Shelby, United States District Judge for the District of Utah, sitting by designation.

handcuff him. Dizmang became unresponsive during this time and ultimately died in an emergency room.

Dizmang's estate (the "Estate") brought this action, raising Fourth Amendment excessive-force and Fourteenth Amendment deliberate-indifference claims against Fischer and a Fourth Amendment failure-to-intervene claim against Reed. On Reed's and Fischer's motions to dismiss, the district court granted qualified immunity to both defendants on the Fourth Amendment claims and dismissed the Fourteenth Amendment claim as abandoned. We affirm. The Estate fails to overcome the presumption that Fischer is entitled to qualified immunity on the Fourth Amendment excessive-force claim, and the Estate has abandoned its other constitutional claims.

### Background[1]

On November 15, 2022, CSPD received reports that Dizmang was displaying symptoms of schizophrenia and post-traumatic stress disorder, damaging his residential vehicle, and walking in traffic. CSPD dispatched Reed, Fischer, and a clinician named Andrea Alban to the scene.

When they first arrived, Reed and Fischer observed Dizmang on a sidewalk, bent over with his hands on his knees. As Reed approached Dizmang, Dizmang walked into a two-lane road with traffic flowing from both directions. Reed

---

[1] Given the procedural posture of this appeal, we take these facts from the underlying complaint and from Reed's body-worn camera footage, which (1) the Estate "refers to in [the] complaint"; (2) is "central to [the] complaint" because it captures defendants' alleged misconduct; and (3) is "indisputably authentic." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (quoting *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024)).

instructed Dizmang to have a seat, and Dizmang uttered "help me" before returning to his hunched-over position. App. 12 (cleaned up). Reed then told Dizmang that he could either sit down or put his hands behind his back. Dizmang approached Reed before turning around and continuing to walk in the road, pausing briefly to return to the hunched-over position. Reed continued to instruct Dizmang to put his hands behind his back as a bystander directed traffic away from Reed and Dizmang.

Reed eventually got ahold of Dizmang, walked him towards the sidewalk, and attempted to handcuff him. Dizmang broke free and walked away from the sidewalk, towards the middle of the road. Reed again got ahold of Dizmang, moved him onto the sidewalk, and attempted to handcuff him a second time. Dizmang again broke free, but this time he fled toward a line of trees in front of a mobile-home park. As Reed caught up and attempted to handcuff Dizmang for a third time, Alban told Fischer to help restrain Dizmang.

Fischer then "suddenly and violently tackled" Dizmang and drove him into the ground, where Dizmang landed on his right side. *Id.* at 13. Fischer then put Dizmang in a chokehold for approximately 30 seconds. During this time, Dizmang "quit moving." *Id.* Then, Fischer "rolled [Dizmang] face down onto the ground, . . . placed his hands on the back of [Dizmang's] neck and dr[ove] his body weight downward, pushing [Dizmang's] neck and face into the ground. At this point, [Dizmang] remained completely motionless." *Id.* Fischer maintained this position for approximately 45 seconds, long enough for Reed to finish handcuffing Dizmang. Fischer and Reed then rolled Dizmang onto his back and seated him upright.

3

By this time, Dizmang was unresponsive. Fischer noted that Dizmang was not aspirating and stated that he wanted to "attempt a nasal airway," and Reed called for an ambulance. Supp. App. vol. 2, 05:06–05:10. Once the ambulance arrived, Fischer and other medical professionals tried to resuscitate Dizmang en route to a hospital. These efforts continued once Dizmang arrived at the hospital. However, Dizmang was pronounced dead in the emergency room.

The Estate then initiated this action. The operative complaint asserts claims under 42 U.S.C. § 1983 for Fischer's alleged excessive force and deliberate indifference and for Reed's alleged failure to intervene, as well as related state-law claims.

Reed and Fischer filed separate motions to dismiss, which the district court granted. The district court dismissed the excessive-force and failure-to-intervene claims on qualified-immunity grounds and dismissed the deliberate-indifference claim as abandoned. It then declined to exercise supplemental jurisdiction over the state-law claims.

The Estate appeals.

## Analysis

The Estate challenges the district court's dismissal of the § 1983 claims. We first address the excessive-force claim and then turn to the failure-to-intervene and deliberate-indifference claims.

## I.    Excessive Force

The Estate argues that the district court erred in granting Fischer qualified

immunity on the excessive-force claim. We review de novo. *Luethje v. Kyle*, 131 F.4th 1179, 1187 (10th Cir. 2025). To overcome a defendant's assertion of qualified immunity, a plaintiff must show "(1) the defendant's actions violated a constitutional right, and (2) the right was clearly established at the time of the violation." *Id.*

Although we elect to affirm on the second prong of the qualified-immunity analysis, we pause to note that the district court did not clearly articulate a decision on prong one. *See Flores v. Henderson*, 101 F.4th 1185, 1193 (10th Cir. 2024) (explaining that courts may decide which prong to address first but must grant qualified immunity if plaintiff fails to meet their burden on either prong). Rather, the district court broadly suggested that Fischer could not seize Dizmang within the meaning of the Fourth Amendment because he was a medical professional trying to render aid. Although we have not addressed whether a medical professional can effect a Fourth Amendment seizure, we have recognized that the Amendment's applicability does not turn on the identity of the state actor or the purpose of the state action. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1206 (10th Cir. 2003) ("The [Fourth] Amendment is expressed in passive voice . . . without specifying or limiting the governmental actors who are to be constrained. The focus of the Amendment is thus on the security of the person, not the identity of the searcher or the purpose of the search."); *Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005) (stating that the Fourth Amendment "focuses on safeguarding persons from unwarranted intrusion[] and not on regulating the behavior of particular governmental actors"). Moreover, the Supreme Court recently clarified that "[a] seizure requires the use of force *with intent*

5

*to restrain*" and that "the appropriate inquiry is whether the challenged conduct *objectively* manifests [such] an intent." *Torres v. Madrid*, 592 U.S. 306, 317 (2021).

But even if the record might have permitted the district court to find that Fischer objectively manifested an intent to restrain Dizmang when he tackled him and held him down, the court didn't discuss whether Fischer's actions qualified as an *unreasonable* seizure for Fourth Amendment purposes. And the facts do not permit us to make that finding in the first instance. So we elect to proceed with an analysis of the clearly established prong.

On that prong, the district court expressly held that Dizmang's right to be free from an unlawful seizure by Fischer was not clearly established. Principally, the Estate faults the district court for requiring it to produce a case with identical facts to show Dizmang's right was clearly established. Although the Estate's understanding of the law is in line with our precedent, we disagree with its assignment of error.

"A right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Luethje*, 131 F.4th at 1187 (quoting *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021)). Precedent is "on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Id.* (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017)). However, "'a case directly on point' is not necessary if 'existing precedent has placed the statutory or constitutional question beyond debate.'" *Id.* (cleaned up) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "Thus, 'general statements of the law can

clearly establish a right for qualified[-]immunity purposes if they apply with obvious clarity to the specific conduct in question.'" *Id.* at 1188 (cleaned up) (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018)). Accordingly, "our analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law." *Id.* (quoting *Truman*, 1 F.4th at 1235).

The Estate relies exclusively on *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), arguing that it "placed all on notice that continuing to use pressure on a vulnerable person's upper torso while he [is] lying on his stomach would present a substantial and totally unnecessary risk of death to the person." Aplt. Br. 26. However, *Weigel* involved materially different conduct and thus is not on point.

In that case, a state trooper watched Weigel run into and get hit by oncoming traffic following a car-accident investigation. *Weigel*, 544 F.3d at 1147–48. The trooper thought Weigel was trying to commit suicide, so he followed Weigel, "tackled him, and wrestled him to the ground in a ditch alongside the highway." *Id.* at 1148. Weigel struggled and eventually found himself face down and restrained by cuffs on his hands, plastic cord around his feet, a different trooper on his upper torso, and a civilian on his legs. *Id.* Believing Weigel subdued, one trooper returned to his vehicle. *Id.* at 1148–49. The civilian stayed on Weigel's legs until an individual at the scene determined that Weigel was in cardiac arrest. *Id.* at 1149. Weigel died. *Id.* at 1147.

Weigel's representatives sued. *Id.* at 1146. At summary judgment, the district

7

court granted qualified immunity to the state troopers on the excessive-force claim. *Id.* at 1147. We reversed, finding that the representatives' version of the facts showed the troopers violated clearly established law: "there [was] evidence that for three minutes the troopers subjected . . . Weigel to force that they knew was unnecessary to restrain him and that a reasonable officer would have known presented a significant danger of asphyxiation and death." *Id.* at 1153–54. It was immaterial that the representatives could identify no case with identical facts because "general principles . . . establish[ed] clearly that it [was] unreasonable to use deadly force when the force [was] totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself." *Id.* at 1154.

Here, Dizmang, like Weigel, posed a risk to himself and others by walking around in traffic. But unlike the troopers in *Weigel*, Fischer restrained Dizmang for roughly 81 seconds—the length of time it took Reed to apply handcuffs. In the first half of that period, Dizmang appears to have been struggling to avoid being handcuffed. In the second half, Reed finished handcuffing Dizmang. Once Dizmang was handcuffed, Reed and Fischer moved him into a seated position. These facts do not support the Estate's theory that Fischer used "totally unnecessary" force to restrain Dizmang and differ substantially from the unnecessary force applied in *Weigel*. *Id.* at 1154. Thus, *Weigel* did not place Fischer on notice that his use of force would subject him to constitutional liability.

Nor did our other caselaw. *See Baca v. Cosper*, 128 F.4th 1319, 1325 n.5 (10th Cir. 2025) (noting that we analyze clearly established law "with full knowledge of

8

settled authority"). For instance, in *Teetz ex rel. Lofton v. Stepien*, we recognized that, by September 2021, it was clearly established that subjecting a person "to a prolonged prone restraint and putting weight on him when he was also shackled at the legs, with his arms restrained by the officers, and no longer resisting constituted excessive force, even where he resisted vigorously during the first part of the encounter." 142 F.4th 705, 729 (10th Cir. 2025). And in *Estate of Booker v. Gomez*, we similarly held that officers used excessive force when, among other things, one officer placed weight on a man's back, in excess of his body weight, while the man was handcuffed and on his stomach. 745 F.3d 405, 424–27 (10th Cir. 2014). However, the same factual dissimilarities between this case and *Weigel* also distinguish this case from *Teetz* and *Estate of Booker*. Unlike the officers in those cases, Fischer used force in the process of restraining Dizmang and relented when Dizmang was finally in handcuffs, placing Dizmang in a seated position.

The Estate next suggests that Fischer's conduct was so egregious that he was on notice that it violated a general constitutional rule. But aside from the general right to be free from excessive force, which is too broad a statement at the clearly established prong, the Estate does not articulate which general constitutional rule Fischer contravened. *See City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (noting that courts cannot "define clearly established law at too high a level of generality"). Further, the Estate argues that the more egregious one's conduct, the less of a need for specificity in the prior case to clearly establish the violation. This is known as the "sliding scale" approach to the clearly established prong. *Morris v. Noe*, 672 F.3d

9

1185, 1196 (10th Cir. 2012). However, as appellees respond, "our recent cases have moved away from that rubric—questioning its viability." *Sanchez v. Guzman*, 105 F.4th 1285, 1292 n.1 (10th Cir. 2024). And to the extent the Estate argues that this is one of the "rare, 'obvious case[s]' where the unlawfulness of the [state actor's] conduct is sufficiently clear," we disagree. *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Fischer's conduct was not particularly egregious, at least when compared to the incidents in *Weigel*, *Teetz*, and *Estate of Booker*; we certainly cannot say he committed an obvious constitutional violation by restraining Dizmang so that Reed could apply handcuffs. Therefore, the Estate has not overcome Fischer's assertion of qualified immunity.

## II.    Failure to Intervene

Next, the Estate challenges the district court's dismissal of its failure-to-intervene claim. The Estate alleged below that Reed violated the Fourth Amendment when he failed to intervene in Fischer's use of force. The district court granted Reed qualified immunity in part because it was not clearly established that he had a constitutional duty to intervene in "a paramedic's unsolicited use of force." App. 121. But on appeal, the Estate does not challenge that analysis. Instead, it suggests that the state had a custodial relationship with Dizmang such that Reed had an affirmative duty to protect him. The Estate's theory—which is new on appeal—pertains to Fourteenth Amendment claims; it doesn't speak to the Fourth Amendment failure-to-intervene claim. *See Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)

10

(explaining Fourteenth Amendment's "special[-]relationship doctrine"). Because the Estate fails to defend its original Fourth Amendment claim on appeal, it has waived any challenge to the district court's conclusion that Reed is entitled to qualified immunity. *See United States v. Yelloweagle*, 643 F.3d 1275, 1280 (10th Cir. 2011).

## III.    Deliberate Indifference

The Estate's deliberate-indifference claim suffers the same fate. Below, the Estate alleged that Fischer was deliberately indifferent to Dizmang's medical needs but never responded to Fischer's motion asserting qualified immunity on that claim. The district court thus deemed the claim abandoned.

On appeal, the Estate challenges the district court's conclusion, arguing that it responded to Fischer's qualified-immunity defense in a section of its summary-judgment brief devoted to wrongful-death and medical-malpractice liability. We are not convinced. That section of the response brief addresses Fischer's immunity from suit under the Colorado Governmental Immunity Act, not § 1983's qualified-immunity framework. And the state law protects public employees from tort liability in state court. *See* Colo. Rev. Stat. § 24-10-119. It would apply in federal court only if a court exercised supplemental jurisdiction over a plaintiff's Colorado tort claims, which didn't happen here. *See Est. of Ceballos v. Husk*, 919 F.3d 1204, 1222 (10th Cir. 2019). Moreover, the Estate's reply brief doesn't mention the Fourteenth Amendment claim. Thus, we affirm the district court's dismissal of the Estate's Fourteenth Amendment claim against Fischer. *See C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming dismissal for abandonment where

11

plaintiff failed to address claim in response to motion to dismiss).

## Conclusion

Because Fischer is entitled to qualified immunity on the Estate's excessive-force claim, and the Estate abandoned its remaining federal claims, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge